**Nos. 16-1903, -1904, -1905**

# United States Court of Appeals for the Federal Circuit

**FO2GO LLC**,

*Plaintiff-Appellant*,

v.

**PINTEREST, INC., SMUGMUG, INC., TUMBLR, INC., YAHOO! INC.**,

*Defendant-Appellees*.

*Appeals from the United States District Court for the District of Delaware in Case Nos. 1:15-cv-00097-RGA, 1:15-cv-00099-RGA, and 1:15-cv-00101-RGA, Judge Richard G. Andrews.*

**DEFENDANTS-APPELLEES PINTEREST, INC., SMUGMUG, INC., TUMBLR, INC., and YAHOO! INC.'S CORRECTED OPENING BRIEF**

PATTERSON & SHERIDAN, LLP
JERRY R. SELINGER (SBN 18008250)
jselinger@pattersonsheridan.com
1700 Pacific Avenue, Suite 2650
Dallas, TX 75201
Telephone: 214-272-0957
Facsimile: 713-623-4846

*Attorneys for Defendant-Appellee SmugMug, Inc.*

DURIE TANGRI LLP
MARK A LEMLEY (SBN 155830)
mlemley@durietangri.com
RYAN M. KENT (SBN 220441)
rkent@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: 415-362-6666
Facsimile: 415-236-6300

*Attorneys for Defendants-Appellees Pinterest, Inc., Tumblr, Inc. and Yahoo! Inc.*

August 2, 2016

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4(a)(1) and Federal Rule of Appellate Procedure 26.1, counsel for Defendants-Appellees Pinterest, Inc., Tumblr, Inc., and Yahoo! Inc. certifies the following:

1. The full name of every party represented by us is:

    a. Pinterest, Inc.
    b. Tumblr, Inc.
    c. Yahoo! Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

    a. Pinterest, Inc. is a real party in interest.
    b. Tumblr, Inc. is a real party in interest.
    c. Yahoo! Inc. is a real party in interest.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us are:

    a. Pinterest, Inc. has no parent corporation and no publicly held company owns 10% or more of its stock.
    b. Yahoo! Inc. owns 100% of Tumblr, Inc.'s stock.
    c. Yahoo! Inc. has no parent corporation and no publicly held company owns 10% or more of its stock.

4. The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this court are:

Daralyn J. Durie (ddurie@durietangri.com)
Mark A. Lemley (mlemley@durietangri.com)
Ryan M. Kent (rkent@durietangri.com)
Alexandra Moss (formerly of)
Durie Tangri LLP
217 Leidesdorff Street
San Francisco, CA 94111
(415) 362-6666

Jack B. Blumenfeld (jblumenfeld@mnat.com)
Stephen J. Kraftschik (skraftschik@mnat.com)
Morris, Nichols, Arsht & Tunnels LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

DATED: August 2, 2016 DURIE TANGRI LLP

By *<u>/s/ Mark A. Lemley</u>*

*Attorneys for Defendants-Appellees*
*Pinterest, Inc., Tumblr, Inc., Yahoo! Inc.*

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4(a)(1) and Federal Rule of Appellate Procedure 26.1, counsel for Defendant-Appellee SmugMug, Inc. certifies the following:

1. The full name of every party represented by us is:

    a. SmugMug, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

    a. SmugMug, Inc.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us are:

    a. SmugMug, Inc. has no parent corporation and no publicly held company owns 10% or more of its stock.

4. The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this court are:

    Jerry R. Selinger (jselinger@pattersonsheridan.com)
    Patterson & Sheridan, LLP
    1700 Pacific Avenue, Suite 2650
    Dallas, TX 752701
    (214) 272-07957

    Karen Jacobs (kjacobs@mnat.com)
    Eleanor G. Tennyson (etennyson@mnat.com)
    Morris, Nichols, Arsht & Tunnels LLP
    1201 North Market Street
    P.O. Box 1347
    Wilmington, DE 19899
    (302) 658-9200

DATED: August 2, 2016

PATTERSON & SHERIDAN, LLP

By *_/s/ Jerry R. Selinger_*

*Attorneys for Defendant-Appellee SmugMug, Inc*.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .......... i

CERTIFICATE OF INTEREST .......... iii

TABLE OF CONTENTS .......... v

TABLE OF AUTHORITIES .......... vii

STATEMENT OF RELATED CASES .......... 1

JURISDICTIONAL STATEMENT .......... 2

STATEMENT OF ISSUES PRESENTED FOR REVIEW .......... 3

INTRODUCTION .......... 4

STATEMENT OF THE CASE .......... 5

STATEMENT OF THE FACTS .......... 7

A. Case Management Conference .......... 7

B. The District Court Finds the "Server Control Means for Parsing" Term Indefinite .......... 8

C. Neither The Defendants Nor the District Court "Ignored" FO2GO's Expert Testimony .......... 10

SUMMARY OF THE ARGUMENT .......... 12

ARGUMENT .......... 15

I. THE DISTRICT COURT CORRECTLY HELD "SERVER CONTROL MEANS FOR PARSING" TO BE A MEANS-PLUS-FUNCTION TERM .......... 15

A. FO2GO Has Failed To Rebut the Presumption That "Server Control Means for Parsing" Is a Means-Plus-Function Limitation .......... 17

B. The "Means" Presumption Is Not Overcome Where The Claim Itself Does Not Recite Structure To Perform The Specified Function ........ 18

1. Neither a "Suggestion" Of a "Class Of Structures" Nor an "Input, Objective, and Output" Is Sufficient to Rebut the "Means" Presumption ........ 18

2. "Parsing" Is A Function, Not A Structure ........ 24

3. The Specification's Disclosure of the Format and Content of Messages Is Irrelevant to Whether "Server Control Means For Parsing" Is a Means-Plus-Function Term ........ 27

II. THE DISTRICT COURT CORRECTLY HELD "SERVER CONTROL MEANS FOR PARSING" TO BE INDEFINITE ........ 29

A. The "Server Control Means For Parsing" Limitation Has No Corresponding Structure and Is Therefore Indefinite ........ 29

B. FO2GO's Proffered Computer Code Excerpts Do Not Render "Server Control Means for Parsing" Any Less Definite ........ 35

III. THE BARNETT DECLARATION DID NOT CREATE AN ISSUE OF MATERIAL FACT PRECLUDING SUMMARY JUDGMENT OF INVALIDITY ........ 37

CONCLUSION ........ 42

CERTIFICATE OF SERVICE ........ 43

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ........ 44

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Altiris, Inc. v. Symantec Corp.*,
318 F.3d 1363 (Fed. Cir. 2003)....................passim

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014)....................22, 23, 24

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*,
521 F.3d 1328 (Fed. Cir. 2008)....................16, 20

*Augme Techs., Inc. v. Yahoo! Inc.*,
755 F.3d 1326 (Fed. Cir. 2014)....................30

*Biomedino LLC v. Waters Techs. Corp.*,
490 F.3d 946 (Fed. Cir. 2007)....................9, 15, 17, 27

*Blackboard, Inc. v. Desire2Learn Inc.*,
574 F.3d 1371 (Fed. Cir. 2009)....................13, 19, 29

*Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*,
412 F.3d 1291 (Fed. Cir. 2005)....................14, 36, 40

*EON Corp. IP Holdings LLC v. AT & T Mobility LLC*,
785 F.3d 616 (Fed. Cir. 2015)....................36, 40

*ePlus, Inc. v. Lawson Software, Inc.*,
700 F.3d 509 (Fed. Cir. 2012)....................26

*Flo Healthcare Sols., LLC v. Kappos*,
697 F.3d 1367 (Fed. Cir. 2012)....................22

*Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*,
732 F.3d 1376 (Fed. Cir. 2013)....................33

*In re Packard*,
751 F.3d 1307 (Fed. Cir. 2014)....................14, 15, 41

*Lighting World, Inc. v. Birchwood Lighting, Inc.*,
382 F.3d 1354 (Fed. Cir. 2004)....................22

*Linear Tech. Corp. v. Impala Linear Corp.*,
379 F.3d 1311 (Fed. Cir. 2004)....................22

*Markman v. Westview Instruments*,
52 F.3d 967 (Fed. Cir. 1995)....................15

*Massachusetts Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software*
462 F.3d 1344 (Fed. Cir. 2006)....................21, 22

*Media Rights Techs., Inc. v. Capital One Fin. Corp.*,
800 F.3d 1366 (Fed. Cir. 2015)....................34

*Net MoneyIN Inc. v. VeriSign, Inc.*,
545 F.3d 1359 (Fed. Cir. 2008)....................15, 17, 20

*Noah Sys., Inc. v. Intuit Inc.*,
675 F.3d 1302 (Fed. Cir. 2012)....................14, 40

*Power Integrations, Inc. v. Fairchild Semiconductor, Int'l, Inc.*,
711 F.3d 1348 (Fed. Cir. 2013)....................22

*Teva v. Sandoz*,
789 F.3d 1335 (Fed. Cir. 2015)....................41

*Triton Tech of Texas, LLC v. Nintendo of Am., Inc.*,
753 F.3d 1375 (Fed. Cir. 2014)....................passim

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
659 F.3d 1376 (Fed. Cir. 2011)....................23, 30

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015)....................passim

**STATUTES**

35 U.S.C. § 112 .......................................................................................... passim

## STATEMENT OF RELATED CASES

No other appeal in or from the same civil actions in the lower court were previously before this or any other appellate court. No case is pending in this or any other court that will directly affect this Court's decision.

## JURISDICTIONAL STATEMENT

Plaintiff-Appellee FO2GO appeals from the district court's March 23, 2016 Final Judgment, which disposed of all claims and all parties in the proceedings below.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**1.** Did the district court err in concluding that the term "server control means for parsing" was a means-plus-function term that did not connote a well-recognized device?

**2.** Did the district court err in concluding that the patent did not disclose an algorithm that performs the parsing function?

## INTRODUCTION

The claims of the patent at issue here are written in classic means-plus-function format, reciting a "server control means for parsing." The district court properly concluded that "server control means for parsing" was not itself a recognized physical structure, and instead was written to describe a function – parsing. It further concluded that the patent claims were indefinite because they did not recite an algorithm that performed the parsing function.

Those conclusions are compelled by the application of well-settled law reaching back nearly two decades – law that FO2GO's brief unfortunately fails even to cite, despite the district court's detailed discussion of the cases.

## STATEMENT OF THE CASE

In January 2015, Plaintiff-Appellant FO2GO LLC ("FO2GO") filed 15 separate actions in the district court alleging infringement of U.S. Patent No. 7,173,651 ("the '651 patent"), including suits against Defendants-Appellees Pinterest, Inc., SmugMug, Inc., Tumbler, Inc., and Yahoo! Inc. (together, the "Defendants" or "Defendants-Appellees"). Each of the two independent claims of the '651 patent requires a "server control means for parsing." The district court permitted a limited claim construction proceeding to resolve the meaning (if any) of that single term. Appx410–411. After submission of briefing, the district court heard oral argument on January 5, 2016. Appx3.

On February 24, 2016, the district court issued a memorandum opinion finding that the term "server control means for parsing" (1) was a means-plus-function term, and that (2) the specification of the '651 patent failed to provide sufficient corresponding structure as to the "parsing" function to render the claim definite. Appx7–11. The district court ratified its claim construction opinion in an order on February 29, 2016, in which the court reiterated:

> [T]he term "server control means for parsing said recipient code from each message" in claims 1 and 2 of U.S. Patent No. 7,173,651 [] is a means-plus-function limitation for which there is no corresponding structure in the specification. Thus, claims 1 and 2 of the '651 patent, and claims 3-5 which depend from them, are indefinite.

Appx13. The district court subsequently entered final judgment of invalidity in favor of the Defendants on March 23, 2016. Appx15. This appeal followed.

## STATEMENT OF THE FACTS

FO2GO seeks to revive five patent claims that have been adjudged invalid as indefinite. As FO2GO's claims were disposed of early in litigation, this case has the benefit of a compact and easily digestible record from which to discern the relevant facts, notwithstanding FO2GO's lengthy 22-page "Statement of the Case" section, virtually all of which comprises legal argument that is later repeated in FO2GO's "Argument" section. Nonetheless, because FO2GO's brief contains several significant factual errors, we describe the events in this case in some detail.

### A. Case Management Conference

The district court held the initial case management conference for this case on October 13, 2015. Appx410. In advance of the hearing, the parties submitted prehearing statements with proposed schedules for the case; in their statements, Defendants proposed early claim construction proceedings to resolve the indefiniteness question of the "server control means for parsing" term without prejudice to any arguments they might make with respect to other terms in FO2GO's asserted claims. Appx396–397. The district court heard Defendants' arguments in favor of early indefinite proceedings, as well as FO2GO's response.

In the district court's October 26, 2015 scheduling order, it determined that an "early, limited claim construction proceeding" was appropriate to "resolve a narrow, potentially case dispositive, claim construction issue concerning the term

'server control means for parsing said recipient code from each said message' as recited in claims 1 and 2 . . . ." Appx410. The district court acknowledged that a finding of indefiniteness for claims 1 and 2 "would likely dispose of these cases" and ordered the parties to proceed with briefing. *Id.*

Although FO2GO structures its arguments to imply that Defendants decided to "not challenge that the claims provide a sufficiently definite structure for the remainder of the [server control means] term," (Appellant's Opening Brief ("App. Br.") at 3), Defendants were not required to request early proceedings to resolve *all* of their Section 112 arguments, and their request to expedite resolution of a single, case-dispositive claim construction issue was not made with prejudice to other potential invalidity or claim construction positions.

### B. The District Court Finds the "Server Control Means for Parsing" Term Indefinite

On October 27, 2015, Defendants submitted their opening claim construction brief directed to the limited and narrow issues of (1) whether the "server control means for parsing" term was a means-plus-function term, and (2) whether the specification of the '651 patent contained sufficient structure for the claimed "parsing" function to avoid a finding of indefiniteness under Section 112. *See* Appx189–205. FO2GO filed its responsive claim construction brief on November 11, 2015 and argued that the early claim construction proceedings were premature because other terms in the asserted claims might need construction.

Appx249–273. Defendants filed their reply brief on December 1, 2015. Appx370–387. Oral argument was heard on January 5, 2016. Appx3.

The district court held the patent claims indefinite on February 29, 2016. The court first noted that the presence of the word "means" in the claim language gave rise to a presumption that the "inventor used the term to invoke 112, ¶ 6" (Appx5 (quoting *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007)), and that the claims of the '651 patent failed to recite "structure sufficient to perform the claimed function in its entirety." *Id.* (quoting *Altiris, Inc. v. Symantec Corp*., 318 F.3d 1363, 1375 (Fed. Cir. 2003)); *see also* Appx7. The district court rejected FO2GO's assertion that the word "parsing" itself provided structure to overcome the Section 112(f) presumption: "Plaintiff identifies as structure the very word which identifies the function: 'parsing.' There is no structure within the claim itself, however, that explains how to perform this parsing function." Appx5.

Second, the district court found the specification was "devoid of any 'algorithm—i.e., a step-by-step procedure—for performing the claimed [parsing] function.'" Appx10 (citation omitted). The portions of the specification cited by FO2GO failed to describe "how the parsing function is performed." Appx9. Neither did the specification provide anything more than "mer[e] clues as to how an ordinar[ily]-skilled artisan ***might*** craft an algorithm." Appx9–10 (emphasis

added). The district court also rejected FO2GO's contention that "parsing is a simple function" that obviated the need for detailed corresponding structure. Appx10 ("Plaintiff argues that parsing is a simple function. This may indeed be true, but there is no simple function exception for the requirements of 35 U.S.C. § 112, ¶ 6."). The district court accordingly found the "server control means" term (and all claims of the '651 patent, by extension) invalid as indefinite. Appx10–11.

### C. Neither The Defendants Nor the District Court "Ignored" FO2GO's Expert Testimony

In the claim construction briefing below, FO2GO submitted an expert declaration from James Barnett ("the Barnett Declaration" or "Barnett Decl.") for its alternative arguments that the "server control means" term was not a means-plus-function term and that, if it was, the specification disclosed sufficient structure for the challenged "parsing" function. *See* Appx306–312. One of the primary pillars for FO2GO's appeal is that the Defendants and district court ignored or overlooked FO2GO's expert declaration. In fact, two of FO2GO's four issues in its Statement of the Issues section raise alleged errors related to the Barnett Declaration. App. Br. at 2.

In its opening appeal brief, FO2GO states no fewer than ***nine times*** that the Barnett Declaration contained "***unrebutted***" evidence or that Defendants otherwise failed to respond to FO2GO's expert declaration. *See, e.g.*, App. Br. at 13, 23, 24, 27, 43, 44, 46. According to FO2GO, "Defendants did not rebut the testimony in

the Barnett Declaration." *Id.* at 46. This is factually wrong. Defendants left the Barnett Declaration neither unaddressed nor "unrebutted." Defendants' reply brief on the "server control means" claim construction dispute expressly responded to the contents of the Barnett Declaration by name. *See*, *e.g.*, Appx379–380; Appx383–384 & n.4; Appx385. More importantly, Defendants responded directly to the arguments that FO2GO proffered based on the Barnett Declaration.

FO2GO also claims that the district court committed clear error by refusing to consider the Barnett Declaration. *See, e.g.*, App. Br. at 13–15, 22, 44–46. According to FO2GO's version of the facts, the district court "fail[ed] to consider the Barnett Declaration." *Id.* at 44. This, too, is factually wrong.

The district court's claim construction opinion plainly addressed FO2GO's expert-derived arguments at length. For example, the district court recited and responded to FO2GO's argument that "the 'parsing' phrase provides sufficient instructions to perform the required function." Appx6. The portion of FO2GO's claim construction brief which the district court quoted and addressed cites only one authority: paragraphs 9 and 10 of the Barnett Declaration. *Compare id.*, *with* Appx269. Moreover, virtually *all* of FO2GO's arguments which the district court addressed were derived explicitly from the Barnett Declaration.

## SUMMARY OF THE ARGUMENT

FO2GO makes four arguments. First, it argues that the district court erred in finding that the term "server control means for parsing said recipient code from each said message" is a means-plus-function term. Second, it argues that the district court erred in finding the specification of the '651 patent lacked sufficient structure for the claimed "parsing" function. Third, FO2GO claims reversible error in the district court's alleged failure to "conside[r] an unrebutted expert declaration providing testimony on the disclosure of a sufficient structure." Fourth, FO2GO argues that the Barnett Declaration and "claim construction issues" created raised genuine disputes of fact and law that precluded summary judgment of invalidity on indefiniteness.

FO2GO is wrong on all counts. It can make these arguments only by ignoring controlling law in this Court, law that was discussed in the district court but which FO2GO does not even bother to cite, much less attempt to distinguish.

First, the district court correctly held that "server control means for parsing" does not itself connote any specific, recognized structure that performs the function of parsing. FO2GO's effort to define "parsing" as the structure that performs parsing is unavailing. This Court has correctly held that the structure disclosed in the claims cannot be the functional language itself. Rather, the disclosed structure must be evident from language "in addition to the functional language." *Altiris*,

*Inc. v. Symantec Corp.*, 318 F.3d 1363, 1375 (Fed. Cir. 2003). Nor can FO2GO prevail by asserting that one of ordinary skill in the art would know how to do parsing. This Court has repeatedly made clear that "[a] patentee cannot avoid providing specificity as to structure simply because someone of ordinary skill in the art would be able to devise a means to perform the claimed function." *Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1385 (Fed. Cir. 2009).

Second, the district court correctly held that the specification does not disclose structure that teaches how to perform the parsing function. The specification simply says that "the server receives a message, parses out information . . . , [and] saves this in a server memory . . . ." Appx60 ('651 patent at 13:38-44). The specification describes which information is parsed, but, as the district court held, "does not describe at all how the parsing function is performed. It therefore cannot be an algorithm." Appx9.

Third, there is no error in the district court's alleged failure to consider FO2GO's expert testimony by way of the Barnett Declaration. The district court quoted and responded to each of FO2GO's claim construction arguments which cited or relied on the Barnett Declaration. Even had the district court somehow overlooked the existence of FO2GO's expert declaration (it did not), the court had complete discretion to "ignore it entirely" if it so chose, for the simple reason that testimony about the knowledge of one of ordinary skill in the art is not sufficient to

satisfy Section 112(f). *See Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1302 (Fed. Cir. 2005) ("[T]he testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification."). Indeed, expert testimony is uniquely disfavored when determining whether a patent's specification discloses sufficient structure for a means-plus-function claim. *See Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012) (observing that the "prohibition against using expert testimony in this matter is a direct consequence of the requirement that the ***specification itself*** adequately disclose the corresponding structure" (emphasis added)).

For similar reasons, the district court properly rejected FO2GO's contention that the existence of the Barnett Declaration "prevent[s] holding that the 'Server Control' Term is indefinite by clear and convincing evidence." App. Br. at 43–44. "Indefiniteness, as a subset of claim construction, is a question of law . . . ." *In re Packard*, 751 F.3d 1307, 1311 (Fed. Cir. 2014). FO2GO cannot convert a legal question about the meaning of the claims into a factual question simply by submitting an expert declaration that this Court has held is "prohibit[ed]" in resolving the question.

## ARGUMENT

### I. THE DISTRICT COURT CORRECTLY HELD "SERVER CONTROL MEANS FOR PARSING" TO BE A MEANS-PLUS-FUNCTION TERM

With certain exceptions not relevant here, claim construction is a question of law that is reviewed by this Court *de novo*. *Markman v. Westview Instruments*, 52 F.3d 967, 979 (Fed. Cir. 1995). "Indefiniteness, as a subset of claim construction, is a question of law …." *Packard*, 751 F.3d at 1311.[1]

"When a claim uses the term 'means' to describe a limitation, a presumption inheres that the inventor used the term to invoke § 112, ¶ 6." *Biomedino LLC v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007); *see also Net MoneyIN Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1366 (Fed. Cir. 2008); ("A claim element that contains the word 'means' and recites a function is presumed to be drafted in means-plus-function format under 35 U.S.C. § 112 ¶ 6.").[2] The only way to rebut that presumption is to show that "the claim, in addition to the functional language, recites structure sufficient to perform the claimed function in its entirety." *Biomedino*, 490 F.3d at 950 (citation omitted;

[1] *Packard* is discussed in the district court's opinion, but FO2GO's opening brief does not cite or discuss it.

[2] *Net MoneyIN* is discussed in the district court's opinion, but FO2GO's opening brief does not cite or discuss it.

quotation omitted).

Section 112(f) permits drafting claim terms "as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof." 35 U.S.C. § 112(f) (as amended after Sept. 16, 2011)*; see also* 35 U.S.C. 112 ¶ 6 (pre-America Invents Act). This species of patent claims requires a *quid pro quo* from the drafter. "In exchange for using this form of claiming, the patent specification must disclose with sufficient particularity the corresponding structure for performing the claimed function and clearly link that structure to the function." *Triton Tech of Texas, LLC v. Nintendo of Am., Inc.*, 753 F.3d 1375, 1378 (Fed. Cir. 2014).[3] "If the function is performed by a general purpose computer or microprocessor, then the specification must also disclose the algorithm that the computer performs to accomplish that function." *Id.* (citing *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech*., 521 F.3d 1328, 1333 (Fed. Cir. 2008)).[4]

---

[3] *TritonTech* is discussed in the district court's opinion, but FO2GO's opening brief does not cite or discuss it.

[4] *Aristocrat* is discussed in the district court's opinion, but FO2GO's opening brief does not cite or discuss it.

### A. FO2GO Has Failed To Rebut the Presumption That "Server Control Means for Parsing" Is a Means-Plus-Function Limitation

"When a claim uses the term 'means' to describe a limitation, a presumption inheres that the inventor used the term to invoke 112, ¶6." *Biomedino*, 490 F.3d at 950. That presumption can be overcome only if the claim language itself discloses the structure that performs that function.[5] The district court held that FO2GO was unable to point to anything in the claims of the '651 patent "in addition to the functional language" resembling "structure sufficient to perform the claimed function in its entirety." *Altiris*, 318 F.3d 1363 at 1375.[6]

The presumption raised by the use of the word "means" in the '651 patent's claim language is rebutted only where the "claim ***itself*** recites sufficient structure to perform the claimed function." *Net MoneyIN*, 545 F.3d at 1366 (emphasis added). Thus, the touchstone for construing the "server control means" is the language of the claims. Representative claim 2 of the '651 patent reads:

---

[5] FO2GO argued below that it was appropriate to apply this Court's decision in *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (*en banc* in relevant part), to determine whether the "server control means" was a means-plus-function limitation. Appx263–267. The district court correctly rejected FO2GO's argument, finding that the presumption created by the use of the word "means" remained in effect: "Plaintiff's reliance [on *Williamson*] is misplaced. . . . The [*Williamson en banc*] court explicitly held that the 'converse presumption,' the one at issue here, 'remains unaffected," and that the 'use of the word 'means' creates a presumption that 112, ¶ 6 applies." Appx7.

[6] *Altiris* is discussed in the district court's opinion, but FO2GO's opening brief does not cite or discuss it.

> a server associated with said destination address and responsive to messages received at said destination address from each said wireless digital camera apparatus; a database storing account configuration data including recipient code data; a server communication device; and ***server control means for parsing said recipient code from each said message***, retrieving from said database account configuration data that is associated with said recipient code, and processing each said message according to said account configuration data.

Appx61 (emphasis added). As this passage makes evident, the claims of the ’651 patent are silent on how a server control means performs parsing. They simply recite the fact that the function of parsing is performed.

### B. The "Means" Presumption Is Not Overcome Where The Claim Itself Does Not Recite Structure To Perform The Specified Function

Unable to find structure recited in the claim, FO2GO offers a series of novel arguments by cobbling together language from this Court's opinion in *Williamson* and a variety of cases, none of which use the word "means" or any application of the rebuttable presumption of Section 112(f). *See* App. Br. 31–38.

#### 1. Neither a "Suggestion" Of a "Class Of Structures" Nor an "Input, Objective, and Output" Is Sufficient to Rebut the "Means" Presumption

According to FO2GO, a patentee may avoid means-plus-function treatment where a person of ordinary skill in the art concludes that the claimed function as recited is "sufficiently clear, and definitely described, to suggest to the ordinarily skilled artisan a defined class of structures." App. Br. at 33. FO2GO specifically contends that the functional "parsing" language following "server control means"

describes a "class of structures" to overcome the presumption of means-plus-function claiming. *Id.* at 33–34.

There are numerous problems with that argument. First, FO2GO offers no evidence that "server control means" is something that skilled artisans would understand to refer to a specific structure. Indeed, the evidence it sought to submit ultimately says something different – that ***parsing*** was a function that was understood in the art. But parsing is the function being performed and not the structure for performing that function. The functional language in the claim itself cannot also serve as the structure. *Altiris*, 318 F.3d at 1375.

Second, it is not enough that a skilled artisan be able to divine a "class of structures" from patent or otherwise find the claims helpful for figuring out how to perform the claimed function. *See Triton Tech.*, 753 F.3d at 1378–79 ("broad class" of structures for numerical integration fails to limit claim language). The claim, not a person of skill in the art, must unambiguously identify the specific structure the patentee employed to perform the claimed function. *Blackboard*, 574 F.3d at 1385.[7]

Third, the parties agreed below (and the district court found) that the parsing "function is implemented by a general purpose computer." Appx8;

[7] *Blackboard* is discussed in the district court's opinion, but FO2GO's opening brief does not cite or discuss it.

Appx197; Appx260–262; Appx264; Appx56 (’651 patent at 6:59-61 (“[T]he server may be programmatically implemented by using many general purpose hardware components.”)). It is well established that if the structure that performs a particular function is a general purpose computer, the patent must disclose an algorithm implemented in that computer in order to be definite. *Aristocrat*, 521 F.3d at 1338. FO2GO cannot sidestep the case law requiring disclosure of algorithms to implement computer functions by saying that a server is a “class of structures” that acts as a general purpose computer.

At the core of FO2GO’s arguments lies a misunderstanding of the law governing the “means” presumption. The claims of the ’651 patent must do more than provide sufficient information to “suggest” a structure (or help a person of ordinary skill “implement” a structure as FO2GO elsewhere argues). The actual rule applied by this Court is whether the “claim ***itself recites*** sufficient structure to perform the claimed function.” *Net MoneyIN*, 545 F.3d at 1366 (emphasis added). Accordingly, to avoid means-plus-function treatment for “server control means for parsing,” FO2GO is required to demonstrate that the claims “recite[] structure sufficient to perform the claimed function in its entirety.” *Altiris*, 318 F.3d at 1375. FO2GO has not (and cannot) do so.

It is little surprise, then, that FO2GO ignores the relevant body of law. FO2GO repeatedly fails to address the controlling cases cited by the district court

(as identified in footnotes throughout this brief) and instead relies exclusively on cases that concern patent claims where the word “means” was ***absent*** from the claim and where the then-governing presumption was ***against*** the claim phrase being a means-plus-function limitation. These cases are inapplicable here, where the disputed claim phrase is drafted in prototypical means-plus-function format (***including*** the word “means”) and where the presumption is ***for*** this phrase being a means-plus-function limitation.

This failing permeates each of the claim construction arguments presented by FO2GO. By way of example, FO2GO cites *Massachusetts Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software* (“*MIT*”), 462 F.3d 1344, 1353 (Fed. Cir. 2006, in order to argue that “disclosing an input, output, and objective [in the claims] is sufficient to disclose structure.” App. Br. at 33. But *MIT* involved the claim term “aesthetic correction circuitry,” which did not involve the presumption that arises with the use of the word “means.” *See MIT*, 462 F.3d at 1353–56. This was crucial to the *MIT* panel’s decision: the “aesthetic correction circuitry” was not a means-plus-function limitation not only because the claims appeared to contain structure for the “circuit” term, but also because the defendant “ha[d] not overcome the [pre-*Williamson*] presumption that the ‘aesthetic correction circuitry’ limitation is not a means-plus-function limitation.” *Id.* at 1356–57.

Every other case and quotation provided by FO2GO is problematic for the same reason,[8] but one citation from FO2GO stands out and requires a detailed response from Defendants. At page 33 of its opening appellate brief, FO2GO purportedly quotes from *Apple v. Motorola* (which in pertinent part reviewed a construction of the term "heuristic") by writing: "The patent need only disclose sufficient structure for a person of skill in the field to provide ***or implement*** an operative software program for the specified function." App. Br. at 33 (emphasis added).

---

[8] In addition to *MIT*, every case cited and quoted by FO2GO involved the application of the previously-existing presumption against means-plus-function treatment where the word "means" was not used. *See Flo Healthcare Sols., LLC v. Kappos*, 697 F.3d 1367, 1373 (Fed. Cir. 2012) ("height adjustment mechanism"); *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1319 (Fed. Cir. 2004) ("circuit" and "circuitry"); *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1359 (Fed. Cir. 2004) ("connector assembly"); *Power Integrations, Inc. v. Fairchild Semiconductor, Int'l, Inc.*, 711 F.3d 1348, 1363 (Fed. Cir. 2013) ("soft start circuit"); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1295 (Fed. Cir. 2014) ("heuristic"). That presumption was overruled in *Williamson*.

Yet the language which FO2GO purportedly quotes from *Apple* matches neither the opinion in *Apple* nor the opinion that the *Apple* panel itself quoted, *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1385 (Fed. Cir. 2011). FO2GO's supposed quotation from this Court's opinion actually inserts extra words that change the scope of language of both *Apple* and *Typhoon Touch*. To illustrate (FO2GO's additions in blue):

| **FO2GO's brief** | **The actual language from *Apple* and *Typhoon* cases** |
|---|---|
| App. Br. at 33 (emphasis added): "'The patent need only disclose sufficient structure for a person of skill in the field to provide ***or implement*** an operative software program for the specified function.' *Apple*, 757 F.3d at 1298 (quoting *Typhoon*, 659 F.3d at 1385)." | *Apple*, 757 F.3d at 1298 (describing definition of "structure" and "algorithm"): "*See, e.g.*, *Typhoon Touch*, 659 F.3d at 1385 ('[T]he patent need only disclose sufficient structure for a person of skill in the field to provide an operative software program for the specified function')."<br><br>*Typhoon Touch*, 659 F.3d at 1385 (describing the meaning of "algorithm"): "In *Finisar* the court explained that the patent need only disclose sufficient structure for a person of skill in the field to provide an operative software program for the specified function." |

Perhaps counsel for FO2GO confused their own arguments with the case law—after all, FO2GO's overarching theme in its appeal brief is that the '651 patent helps a person of ordinary skill "***implement***" the parsing function even though it does not expressly provide structure that performs it. *See, e.g.*, App. Br.

at 39–40 (arguing specification is "sufficient structure to ***implement*** such a parsing function" (emphasis added)). *See also id.* at 41 ("simply use this flow chart to ***implement*** a program" (emphasis added)); 15 (arguing claims and/or disclosures help "***implement***" the parsing function); 16 (same); 18 (same); 20 (same). Honest mistake or not, FO2GO's misquotation of the law cannot, of course, help it here. The *Apple* opinion does not say what FO2GO claims it says, and neither do any of FO2GO's other authorities.

#### 2. "Parsing" Is A Function, Not A Structure

In making the arguments discussed above, FO2GO also argues that "parsing" is sufficiently clear to act as a "class of structures" such that the means-plus-function presumption is overcome. *See* App. Br. at 34–35. According to FO2GO, the word "parsing" is both functional and structural because the word is "used in common parlance or by a person of skill in the art to designate structure," and so "mean-plus-function [sic] does not apply." *Id.* at 35.

FO2GO's position that structure for the challenged "parsing" function was the word "parsing" itself is meritless. As *Altiris* makes clear, the structure disclosed in the claims cannot be the functional language itself. The disclosed structure must be evident from language "in addition to the functional language." *Altiris*, 318 F.3d at 1375. Were it otherwise, Section 112(f) would be meaningless, because the recitation of a function would itself suffice to take a

purely functional claim out of the realm of means-plus-function claiming. Thus, "parsing" cannot be the structure that performs "parsing."

FO2GO's "parsing performs parsing" bootstrap also fails for a second reason. It is not enough that a skilled artisan be able to divine a "class of structures" from patent or otherwise find the claims helpful for figuring out how to perform the claimed function. The whole point of 112(f) is to enable the public to understand ***which*** of multiple possible structures the patentee chose to claim. *See Triton Tech.*, 753 F.3d at 1378–79 ("broad class" of structures for numerical integration fails to limit claim language). And FO2GO offers no argument that the claim language discloses specific structures (out of the universe of potential structures for performing parsing) to which the patentee intended to limit his claims.

When FO2GO reaches to provide examples of structures to perform the function of parsing, it turns to its expert ***and not the language of the claims***. App. Br. at 35–36:

> [I]n order to parse the recipient code from a message containing a recipient code, a person of ordinary skill in the art need only use a well-known one-step software operation, *e.g.*:
>
> • for ASP code, "Request.Form("Recipient_Code")"; or
> • for PHP code, "$_POST("Recipient_Code")."")

Assume for the sake of argument that these examples of commands from ASP and PHP languages are algorithms and that the "parsing" function could be performed

by these and other commands in various programming languages. Even so, the ***claims*** do not identify these ASP or PHP commands or any other specific way that the "parsing" function is to be performed—a fact that FO2GO cannot overcome.

FO2GO also failed to offer any construction to the district court that would limit the scope of the claims to specific algorithms. *See* Appx258–259. FO2GO instead proposed that the claims cover any computer code capable of "analyzing the message to identify the recipient code." Appx268; *see also* App. Br. at 40 ("[A] person skilled in the art would understand the disclosure to encompass particular code, *i.e.*, the specific programming language instruction or operation, for parsing code and the disclosure is sufficient to implement the parsing operation . . . ."). If so, then "[t]he patentee has in effect claimed everything . . . under the sun" that performs the parsing function. *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 519 (Fed. Cir. 2012).[9] The district court below put it: "This is akin to claiming a 'cutting means' without specifying that the means for cutting may be scissors, box cutters, or a knife." Appx10. That is not permitted under Section 112(f).

[9] *ePlus* is discussed in the district court's opinion, but FO2GO's opening brief does not cite or discuss it.

### 3. The Specification's Disclosure of the Format and Content of Messages Is Irrelevant to Whether "Server Control Means For Parsing" Is a Means-Plus-Function Term

FO2GO begins its final argument against the means-plus-function presumption by saying that ***other*** structure for performing ***other*** functions in the claim language provides enough context for a person of ordinary skill to figure out how to perform the parsing function. *See* App. Br. at 34 ("[D]isclosure to a person of ordinary skill in the art for creating a message containing a recipient code also discloses the structure for parsing the recipient code from that same message."); *id.* at 38 ("[S]tructure is disclosed to the person of ordinary skill in the art who was likewise required by the claim to create the message."). That is a *non sequitur*. FO2GO is required to show that the claim language discloses a structure sufficient to perform the ***parsing function***, not to perform a message-creation function. *See Biomedino*, 490 F.3d at 950.

FO2GO's argument appears to boil down to this: "Because the format and contents of the message are known by the skilled artisan who created the message, the same skilled artisan would be provided with sufficient structure for parsing the recipient code from the message that the skilled artisan created." App. Br. at 38. Even assuming FO2GO's conjecture is correct, the ***claims*** of the '651 patent are silent with respect to the "format and content of the message." The ***specification*** might contains various disclosures directed to the structure of a message (*e.g.*,

Figures 16 and 19 and accompanying text), but that is immaterial because the claims still fail to "recite[] sufficient structure to perform the claimed function in its entirety." *Altiris*, 318 F.3d at 1375.[10]

In any case, the claims of the '651 patent disclose no structure explaining ***how*** the parsing function is performed. *See* discussion *supra* Section I.A. Indeed, FO2GO admits that "server control means" does not itself describe structure for parsing. In its opening appeal brief, FO2GO states that a "skilled artisan does not need to devise or craft a means for parsing code" not because the claims disclose one but because parsing is a "***well-known*** one-step software operation." App. Br. at 35–36 (emphasis added). FO2GO goes on to provide that "parsing" can be performed in potentially innumerable ways depending on what programming language is involved. But as explained above, not a single one of these ways appear in the claims of the '651 patent. *See* discussion *supra* Section I.B.2. And whether one of ordinary skill in the art could figure out a way to implement parsing is simply irrelevant: "[a] patentee cannot avoid providing specificity as to

[10] As discussed below, even in the specification the disclosure of the format and content of the message does not disclose how parsing is performed; it is merely information that one of ordinary skill in the art could or could not use in devising software that could perform the claimed function. *See* discussion *infra* Section II.A.

structure simply because someone of ordinary skill in the art would be able to devise a means to perform the claimed function." *Blackboard*, 574 F.3d at 1385.

## II. THE DISTRICT COURT CORRECTLY HELD "SERVER CONTROL MEANS FOR PARSING" TO BE INDEFINITE

### A. The "Server Control Means For Parsing" Limitation Has No Corresponding Structure and Is Therefore Indefinite

Under Section 112(f), the scope of a means-plus-function claim term is determined by first identifying the function recited by the claim, and then identifying the structure disclosed in the specification that corresponds to that recited function. *See Aristocrat*, 521 F.3d at 1331. If, as here, the specification does not disclose a corresponding structure, the claim term is indefinite. Each claim in which the term appears is invalid. *Id.*

In this case, the parties and the district court agreed that the claimed parsing function is intended to be "implemented by a general purpose computer." Appx8. For the means-plus-function term to avoid invalidity for indefiniteness, the specification must therefore "disclose the algorithm that the computer performs to accomplish [the claimed] function." *Triton Tech*, 763 at 1378.

The specification of the '651 patent references the parsing function exactly once:

> At block 544 the server receives a message, parses out information such as account number, image, audio data, date, time, classification, location, and recipient code which is included in the message, saves this in a server memory for future access and in a holding area

> designated for this account, and if a path is associated with the recipient code saves the message at that location.

Appx60 ('651 patent at 13:38-44). This excerpt from the '651 patent describes the information which may be parsed out from a message, but it is silent as to how the parsing function is performed. The word "algorithm," to be sure, is broad. An algorithm can be "mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Typhoon Touch*, 659 F.3d at 1385. But it is by its nature a description of the ***way*** the inventor performed the claimed function. Nothing in the language of the specification tells us anything at all about how the invention performs parsing. It tells us that parsing happens, and it tells us what information is parsed, but it does not even begin to describe an algorithm, formula, or series of steps for actually performing that parsing. "Simply disclosing a black box that performs the recited function is not a sufficient explanation of the algorithm required . . . ." *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1338 (Fed. Cir. 2014).

Unable to point to structure in the specification for "parsing," FO2GO pivots and contends that the '651 patent provides "a detailed blueprint . . . for the message to be parsed, which sets the structure for the parsing operation." App. Br. at 39. FO2GO points to Figure 19, which "shows the structure of the message received by the server control":




FIG. 19

*Id.* at 40. FO2GO also points to Figure 16, which it says "discloses to a skilled artisan the structure for parsing the recipient code from the message":




FIG. 16

*Id.* at 41. Armed with these disclosures, FO2GO says, "a person skilled in the art would understand the disclosure to encompass particular code, *i.e.*, the specific

programming language instruction or operation, for parsing the recipient code." *See id.* at 40.

This is a conclusory assertion which crumbles upon further inspection. Neither Figure 19 nor Figure 16 (or their accompanying text) identifies the "specific programming language" with which to program the structure of the message much less any "specific programming language instruction or operation, for parsing the recipient code." These figures do not even teach how the parsing is to be performed. They show that a message has several parts, and that each of those parts is moved. But information about the content and format of a message doesn't disclose ***how the message is parsed***.

FO2GO itself admits as much. It argues, not that Figure 16 is itself performing parsing, but instead that the structure of a message as reflected in Figure 16 renders "parsing the recipient code from the message" a "straightforward operation," such that any person of ordinary skill could "implement a ***software program*** to parse the recipient code" because "the format and contents of the message are known and the message ***can be analyzed*** using its known structure." App. Br. at 18 (emphases added). Even if that were true, the simple fact is that the specification did not itself disclose or implement such a software program or explain the particular way in which it did so. As the district court found, "[n]one of these disclosures are an algorithm. They are merely clues

as to how an ordinarily skilled artisan might construct an algorithm. That is not sufficient." Appx9–10; *accord Aristocrat*, 521 F.3d at 1337 ("It is not enough for the patentee simply to state or later argue that persons of ordinary skill in the art would know what structures to use to accomplish the claimed function.").

In *Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, No. 2015-1732, slip op. at 13 (Fed. Cir. July 28, 2016), a panel of this Court assessed whether a patent disclosed sufficient corresponding structure for the term "symbol generator" under Section 112(f). *Id.* The patent was directed to a "system that allows multiple cellular phone users to monitor others' locations and statuses via visual display of such information on a map." *Id.* at 3. In its opinion, the court observed that the specification "suggest[ed] that these symbols are generated via 'a map database and a database of geographically referenced fixed locations" and a "database with the constantly updated GPS location." *Id*. at 13. But this was neither structure for "symbol generator" nor sufficient under Section 112(f). The court found that the disclosure only "addresses the *medium* through which the symbols are generated." *Id.* (emphasis in original).

The contrast with *Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*, 732 F.3d 1376, 1380 (Fed. Cir. 2013), is instructive.[11] There, the Federal Circuit held that a

---

[11] *Ibormeith* is discussed in the district court's opinion, but FO2GO's opening brief does not cite or discuss it.

claim was invalid for failure to disclose a sufficient algorithm even though the specification contained a table titled “Sleep Propensity Algorithm – Definition” with nine different variable ranges, “what looks like a mathematical equation,” and a graph mapping the relationship of those variables. Nonetheless, this Court held that disclosure insufficient. It said that the disclosed algorithm and equation “merely indicates that weighting based on circadian patterns occurs. Neither Table 10 nor the associated tables disclose how to perform the weighting of the S circ or any other factor. Table 10 merely lists inputs without specifying any single formula or function or algorithm defining the contribution of any of the inputs to a computation.” *Id*. at 1381–82. If disclosing all the variables that go into an algorithm is insufficient because the specification does not disclose the particular weight given to each variable, it is hard to see how a disclosure that identifies the pieces of a message but provides no detail as to how it is parsed can satisfy Section 112. *Accord Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1375 (Fed. Cir. 2015) (mere disclosure of a “set of rules” without any “detail about the rules themselves or how the . . . mechanism determines whether the rules are being enforced” cannot satisfy the algorithm requirement).

Similarly, in *Triton Technologies*, this Court reviewed a district court’s decision finding “integrator means” indefinite. *See* 753 F.3d at 1377. There, the district court acknowledged that “numerical integration” was not an algorithm,

and that there were multiple ways to calculate integrals. *Id.* at 1377–78 (district court found disclosure of "numerical integration" not sufficient because "[n]umerical integration' . . . is not a single algorithm, but rather a whole class of algorithms that can be used to calculate definite integrals"). That made the claims indefinite:

> As the district court correctly determined, numerical integration is not an algorithm but is instead an entire class of different possible algorithms used to perform integration. Disclosing the ***broad class*** of "numerical integration" ***does not limit the scope of the claim*** to the "corresponding structure, material, or acts" that perform the function, as required by section 112.

*Id*. at 1379 (internal citation omitted; emphases added). So, too, here.

**B. FO2GO's Proffered Computer Code Excerpts Do Not Render "Server Control Means for Parsing" Any Less Definite**

Further underscoring Defendants' point, FO2GO argues that there are at least two ways to perform the parsing function:

> • for ASP code, "Request.Form("Recipient_Code")"; or
> • for PHP code, "$_POST("Recipient_Code")."

App. Br. at 40. These examples do not appear in the patent specification. They are excerpts of computer code that FO2GO first provided in claim construction briefing by way of expert declaration. FO2GO called these computer code excerpts "algorithms" in the proceedings below and argued that they could be used to instruct a server to perform the claimed "parsing" function. Appx258–259.

Let's assume for the sake of argument that FO2GO's ASP and PHP code is sufficient to perform the claimed parsing function. Are the ASP and PHP code excerpts disclosed in '651 patent? No. Does the '651 patent disclose the use of the ASP and PHP machine languages? No. Does the '651 patent limit itself to the performance of the claimed functions using specific language? No. The ASP and PHP code excerpts, therefore, cannot help FO2GO define which specific algorithm disclosed in the specification performs the parsing function.

It makes no difference that FO2GO proffered the ASP and PHP examples through its claim construction expert. The code fails to limit the claims as required by Section 112(f) because corresponding structure for Section 112(f) must be found in the specification, not in a post-hoc expert declaration. *E.g.*, *EON Corp. IP Holdings LLC v. AT & T Mobility LLC*, 785 F.3d 616, 623 (Fed. Cir. 2015) ("Where the specification discloses no algorithm, the skilled artisan's knowledge is irrelevant."); *Default Proof*, 412 F.3d at 1302 ("[T]he testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification."); *see also* discussion *supra* Section III.[12] As this Court said en banc in *Williamson*,

> The testimony of one of ordinary skill in the art cannot supplant the ***total absence of structure*** from the specification. The prohibition

[12] *Default Proof* is discussed in the district court's opinion, but FO2GO's opening brief does not cite or discuss it.

> against using expert testimony to create structure where none otherwise exists is a direct consequence of the requirement that the specification adequately disclose corresponding structure. Thus, the testimony of Dr. Souri ***cannot create structure where none otherwise exists***.

*Williamson*, 792 F.3d at 1354 (internal citations omitted; emphases added).[13]

## III. THE BARNETT DECLARATION DID NOT CREATE AN ISSUE OF MATERIAL FACT PRECLUDING SUMMARY JUDGMENT OF INVALIDITY

FO2GO's last-ditch effort on appeal is to argue that the district court "clearly erred" by failing to consider the Barnett Declaration, which FO2GO claims "explained why the term 'parsing' and the remaining claim language disclosed sufficient structure for the 'Server Control' Term." App. Br. at 44. In FO2GO's view, granting summary judgment was improper "without considering the unrebutted Barnett Declaration stating that certain disclosures in the specification indicated to one skilled in the art sufficient structure for the 'Server Control' Term." App. Br. at 44–45.

There are many problems with this argument.

First, the Barnett Declaration was not "unrebutted." *See* App. Br. at 46 ("Defendants did not rebut the testimony in the Barnett Declaration."). In fact,

---

[13] Contrary to FO2GO's representation at App. Br. at 45–46, Defendants have never contended that "the claims and the specification disclose an algorithm that . . . is inadequate." Rather, Defendants' position has always been that the claims and specification disclose no algorithm at all. *See, e.g.*, Appx382–383.

Defendants addressed both the content and admissibility of the Barnett Declaration, by name, multiple times in its briefing below. *See* Appx379–380 ("FO2GO's own expert in fact opines that there are multiple ways to program a general purpose computer to program a 'parsing' function."); Appx383–384 ("FO2GO's expert confirms that a skilled artisan could choose from different 'parsing' algorithms depending on the particular implementation."); Appx384 ("While Mr. Barnett provides examples of what he calls algorithms (in the form of computer code) that he says could instruct a server to perform the claimed 'parsing' function, ***neither*** of those algorithms is disclosed in the specification." (emphasis in original)); Appx385 ("FO2GO cannot use the testimony of Mr. Barnett to create structure where none was disclosed in the patent."); Appx385 ("In fact, the Court need not even consider the testimony of Mr. Barnett and corresponding arguments by FO2GO because 'a person of ordinary skill in the art plays no role whatsoever in determining whether an algorithm must be disclosed as structure for a functional claim element.'").

Second, the district court did not "fail[] to consider" the Barnett Declaration or grant summary judgment "without considering the unrebutted Barnett Declaration," as FO2GO claims. App. Br. at 44. It is true that the district court's opinion never mentions Mr. Barnett by name. The rest of the district court's claim construction opinion, though, quotes multiple parts of FO2GO's claim

construction briefing based on Mr. Barnett's declaration. The district court's analysis plainly disposes of FO2GO's expert-derived arguments.

For instance, the district court recited and responded to FO2GO's argument that "the 'parsing' phrase provides sufficient instructions to perform the required function." Appx7. That portion of FO2GO's claim construction brief cited only one authority: paragraphs 9 and 10 of the Barnett Declaration. *Compare id.*, *with* Appx269. Elsewhere, the district court recited and responded to FO2GO's argument that the specification provided a "blueprint of the message format and structure" from which a person could "implement a program to parse the recipient code from the message." That portion of FO2GO's brief cited only paragraphs 21 and 22 of the Barnett Declaration. In other words, the district court obviously considered and rejected FO2GO's arguments which derived from its expert declaration—it just didn't *name* Mr. Barnett in claim construction opinion as FO2GO's expert.

Third, and most important, Mr. Barnett's declaration is simply irrelevant to the issues in this case. The specification does not disclose an algorithm for parsing. Expert testimony may be relevant in a case where the parties agree there is an algorithm but dispute whether it is sufficiently disclosed. But it is irrelevant when the specification does not disclose an algorithm at all. As the Federal Circuit noted in *EON*:

> "[O]ur case law regarding special purpose computer-implemented means-plus-functions claims is divided into two distinct groups: First, cases in which the specification discloses no algorithm; and second, cases in which the specification does disclose an algorithm but a defendant contends that disclosure is inadequate." Where the specification discloses no algorithm, the skilled artisan's knowledge is irrelevant. Where the specification discloses an algorithm that the accused infringer contends is inadequate, we judge the disclosure's sufficiency based on the skilled artisan's perspective.

*EON*, 785 F.3d at 623–24 (internal citations omitted). Because—as the district court found—there is no algorithm disclosed in the specification, any expert testimony is irrelevant. Indeed, this Court made clear in *Default Proof*, 412 F.3d at 1302, that "the testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification." In *Noah*, this Court went even further, referring to the "***prohibition*** against using expert testimony" as a prohibition that "is a direct consequence of the requirement that the specification itself adequately disclose the corresponding structure." *Noah*, 675 F.3d at 1312 (emphasis added).

For similar reasons, the district court properly rejected FO2GO's contention that the existence of the Barnett Declaration "prevent[s] holding that the 'Server Control' Term is indefinite by clear and convincing evidence." App. Br. at 43–44. "Indefiniteness, as a subset of claim construction, is a question of law . . . ." *In re Packard*, 751 F.3d at 1311. FO2GO cannot convert a legal question about the meaning of the claims into a factual question simply by submitting an expert

declaration that this Court has held is "prohibit[ed]" in resolving the question. As this Court explained in *Teva v. Sandoz*, 789 F.3d 1335 (Fed. Cir. 2015), in rejecting expert testimony on the issue of indefiniteness,

> A party cannot transform into a factual matter the internal coherence and context assessment of the patent simply by having an expert offer an opinion on it. The internal coherence and context assessment of the patent, and whether it conveys claim meaning with reasonable certainty, are questions of law. The meaning one of skill in the art would attribute to the term molecular weight in light of its use in the claims, the disclosure in the specification, and the discussion of this term in the prosecution history is a question of law. The district court should not defer to Dr. Grant's ultimate conclusion about claim meaning in the context of this patent . . . .

*Id*. at 1342.

The district court addressed the Barnett Declaration and still found the claims of the ’651 patent indefinite. And even had the district court disregarded the arguments of the Barnett Declaration, which it did not, it was fully permitted to do so because that testimony was simply irrelevant to the legal issues. Neither circumstance raises genuine issues of material fact precluding summary judgment, as FO2GO argues (App. Br. at 46).

## CONCLUSION

The district court's judgment in favor of Defendants-Appellees should be affirmed.

Dated: August 2, 2016

Respectfully submitted,

DURIE TANGRI LLP

By: *\/s\/ Mark A. Lemley*
MARK A. LEMLEY

*Attorneys for Defendants-Appellees Pinterest, Inc., Tumblr, Inc., Yahoo! Inc.*

DATED: August 2, 2016

PATTERSON & SHERIDAN, LLP

By *\/s\/ Jerry R. Selinger*
JERRY R. SELINGER
*Attorneys for Defendant-Appellee SmugMug, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 2nd day of August, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and served, via email, a true and correct copy of the same to the following:

*/s/ Mark A. Lemley*
MARK A. LEMLEY

**CERTIFICATE OF COMPLIANCE
WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e). The brief contains 8,523 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14 point font.

DATED: August 2, 2016 DURIE TANGRI LLP

By *_____/s/ Mark A. Lemley_____*
MARK A. LEMLEY

*Attorneys for Defendants-Appellees
Pinterest, Inc., Tumblr, Inc., Yahoo! Inc.*